Naveen Madala (SBN 219817)
MADALA LAW
89 Sapphire
Irvine, CA 92602
Tel: (714) 879-7100
naveen@madalalaw.com

Attorneys for Plaintiff
HeartLung Corporation

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **HEARTLUNG CORPORATION, a Delaware corporation,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SIMONMED IMAGING MANAGEMENT, LLC; HEALTH DIAGNOSTICS OF CALIFORNIA, A PROFESSIONAL CORPORATION; SIMONMED IMAGING, LLC; CASCAID HEALTH, INC.; and DOES 1–20, inclusive,**<br><br>**Defendants,**<br><br>**and**<br><br>**BDI, INC. and THE LUNDQUIST INSTITUTE FOR BIOMEDICAL INNOVATION,**<br><br>**Nominal Defendants joined under Fed. R. Civ. P. 19.** | **Case No.** '26CV6085 DMS BJW<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**1. Direct Infringement of U.S. Patent No. 9,119,590**<br>**2. Direct Infringement of U.S. Patent No. 10,695,022**<br>**3. Induced Infringement (35 U.S.C. § 271(b))**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff HeartLung Corporation ("HeartLung"), by and through its counsel, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising from Defendants' unauthorized use and commercialization of phantomless thoracic bone mineral density ("BMD") reporting derived from thoracic CT scans. HeartLung's pre-suit investigation includes a May 2026 coronary artery calcium ("CAC") examination that HeartLung's founder, Morteza Naghavi, M.D., obtained at SimonMed's La Jolla facility in San Diego, California, followed by a SimonMed/Cascaid Health patient-facing bone-density result derived from that examination. The result characterized the patient's bone density as normal, reported a T-score of approximately −0.55, and displayed coronal and sagittal thoracic vertebral CT images. HeartLung has a good-faith basis to allege that the underlying workflow practices one or more claims of U.S. Patent Nos. 9,119,590 (the "'590 Patent") and 10,695,022 (the "'022 Patent"). [Exs. B, K–L.]

2. The asserted patents do not claim the abstract idea of measuring bone density. They claim a specific, non-conventional technical solution to a concrete limitation of computed-tomography imaging: how to derive a validated, quantitative trabecular bone-density measurement from a cardiac CT study that was never acquired for bone-densitometry purposes, that contains no calibration phantom, and that captures only a narrow window of the thoracic spine.

3. The accused conduct is not an isolated encounter with an unknown patent holder. SimonMed and its senior leadership had direct dealings with HeartLung for more than a year concerning HeartLung's AutoBMD technology and the commercial deployment of CT-based bone-density analysis. Dr. John Simon personally negotiated with HeartLung; on February 1, 2025 Dr. Simon transmitted a signed contract to HeartLung; SimonMed requested a joint press

release; the parties discussed use of AutoBMD on coronary calcium and CCTA studies; and the parties discussed PACS connectivity options and implementation planning. [Ex. C.]

4. Those dealings gave SimonMed actual and particularized knowledge of HeartLung's CT-based bone-density technology, AutoBMD product, and claimed exclusive commercial position no later than early 2025. In or about April 2025, SimonMed paused and then declined to continue the project after HeartLung's counsel raised legal concerns regarding a proposed reimbursement-contingent payment structure, and SimonMed thereafter ceased substantively engaging with HeartLung. SimonMed received actual written notice of the '590 and '022 Patents and of HeartLung's specific infringement allegations no later than June 3, 2026, and again on June 15, 2026. [Exs. C–E.]

5. In May 2026, Dr. Naghavi obtained a coronary artery calcium examination at SimonMed's La Jolla facility and paid SimonMed Imaging for the CAC examination and the associated bone-density service. The SimonMed/Cascaid Health result subsequently characterized his bone density as normal, reported a T-score of approximately −0.55, displayed a bone-density scale, and included coronal and sagittal vertebral CT images. The underlying study was a cardiac/coronary calcium CT examination with a limited thoracic field of view; HeartLung's pre-suit investigation indicates that no calibration phantom was used. [Ex. B.]

6. The asserted patents originated with the Lundquist Institute for Biomedical Innovation (formerly the Los Angeles Biomedical Research Institute, or "LA BioMed"), which is the record owner. BDI, Inc. ("BDI") represented to HeartLung that it held rights from LA BioMed/Lundquist sufficient to sublicense the patents and expressly represented in the May 14, 2021 Patent License Agreement that BDI had the right to sublicense them. BDI's counsel later confirmed in writing that LA BioMed licensed the patents to BDI, and Lundquist

has since described BDI in writing as its exclusive licensee, while both dispute the scope of HeartLung's independent enforcement rights. HeartLung has not been provided the underlying LA BioMed/Lundquist–BDI agreement and does not plead its date or undisclosed terms. By the May 14, 2021 agreement, BDI granted HeartLung an exclusive, worldwide license/sublicense under the '590 and '022 Patents. Before filing this action, HeartLung asked both Lundquist and BDI in writing to join voluntarily or to consent to joinder. Both refused in writing on October 2, 2026. Because neither will join voluntarily, and to ensure that all interests in the asserted patents are represented and complete relief can be afforded, HeartLung joins BDI and Lundquist as nominal defendants under Federal Rule of Civil Procedure 19. No infringement claim or claim for monetary relief is asserted against BDI or Lundquist in this action. [Exs. A, F, I, M–O.]

7. HeartLung seeks damages and injunctive relief for the Accused Defendants' infringement, including infringement occurring after they received actual written notice on June 3, 2026 and June 15, 2026.

## THE PARTIES

8. Plaintiff HeartLung Corporation is a Delaware corporation with its principal place of business at 2450 Holcombe Blvd., TMC Innovation, Houston, Texas 77021. HeartLung develops and commercializes artificial-intelligence and quantitative-imaging technologies, including AutoBMD, an FDA-cleared CT-based bone-density analysis product (K213760). [Ex. H.]

### *A. The SimonMed Defendants*

9. HeartLung alleges the roles of the SimonMed entities below on the basis of publicly available corporate, facility, NPI, patient-facing, and SimonMed affiliate records, together with the documents and communications exchanged during the parties' 2024–2025 dealings. The SimonMed entities use a common brand and have overlapping ownership or management, while their internal allocation of contracting, operational, technical, and billing responsibility is not

fully visible to patients or the public. HeartLung therefore pleads the specific roles that are presently supported and, where the internal allocation is not known, pleads participation on information and belief subject to discovery.

10. Defendant SimonMed Imaging Management, LLC is a limited liability company that, on information and belief, performs management, administrative, contracting, and vendor-integration functions for SimonMed-branded operations, including SimonMed-branded facilities in this District. HeartLung's June 3, 2026 cease-and-desist letter was addressed to SimonMed Imaging Management, LLC, and BDI counsel's July 7, 2026 response copied Scott Altes as General Counsel of SimonMed Imaging Management, LLC. The precise allocation of vendor-contracting and implementation responsibility among the SimonMed entities is within Defendants' possession and will be addressed in discovery. [Exs. D, F.]

11. Defendant Health Diagnostics of California, A Professional Corporation ("Health Diagnostics"), is a California professional corporation and a SimonMed affiliate. SimonMed's public privacy notice identifies Health Diagnostics of California, PC as a SimonMed affiliate. Public patient-facing and NPI records associate the SimonMed Imaging–La Jolla facility at 4570 Executive Drive, Suite 100, San Diego, California 92121 with NPI 1104321959, whose legal business name is Health Diagnostics of California, A Professional Corporation. On information and belief, Health Diagnostics operated and/or furnished facility or professional services at the La Jolla location in connection with Dr. Naghavi's May 2026 examination. [Ex. J.]

12. Defendant SimonMed Imaging, LLC is an Arizona limited liability company affiliated with the SimonMed imaging network and, on information and belief, is the entity whose trade name, "SimonMed Imaging," appears on the La Jolla facility and on SimonMed's patient-facing materials. Dr. Naghavi's May 2026 patient charge appeared under the name "SimonMed Imaging." On

information and belief, SimonMed Imaging, LLC participates in ownership, administration, contracting, equipment, personnel, or other operational functions supporting SimonMed-branded imaging services, including at the La Jolla facility. HeartLung does not presently know which SimonMed legal entity booked that patient charge or any downstream payment to a vendor; the billing and intercompany allocation are within Defendants' records and will be established through discovery.

13. HeartLung refers to SimonMed Imaging Management, LLC, Health Diagnostics, and SimonMed Imaging, LLC collectively as "SimonMed" or the "SimonMed Defendants." HeartLung alleges that the SimonMed Defendants participated in the accused workflow to the extent described above and will conform the allegations to the contracts, corporate records, facility records, billing records, and technical evidence produced in discovery. Additional SimonMed affiliates, including SMI Imaging, LLC and SimonMed Imaging MSO, LLC, are not named as defendants at this time; HeartLung reserves the right to seek leave to add them if discovery establishes their participation in the accused workflow and that venue is proper as to them.

***B. Cascaid Health, Inc.***

14. Defendant Cascaid Health, Inc. ("Cascaid") is a corporation that publicly lists the mailing address 809 Cuesta Drive, Ste B PMB 1060, Mountain View, California 94040. SimonMed publicly describes its Digital Health Platform as "powered by Cascaid Health" and identifies CT Bone Density+ among the enhanced examinations delivered through that platform. The patient-facing bone-density result was delivered to Dr. Naghavi through Cascaid Health's web portal at sm.cascaidhealth.com. On information and belief, Cascaid provides, operates, configures, hosts, and/or supplies material portions of the patient-facing software, reporting, navigation, or processing service used in the accused workflow. [Ex. B.]

15. On information and belief, Cascaid performs one or more steps of the

accused workflow itself and/or participates with SimonMed in causing those steps to be performed. Cascaid is therefore named as a direct infringer and, in the alternative, as a participant in joint or attributable performance with SimonMed. The precise division of processing, reporting, and delivery functions among Cascaid, SimonMed, BDI, and any additional software provider is not visible in the patient-facing report and is within Defendants' possession and control. HeartLung refers to the SimonMed Defendants and Cascaid collectively as the "Accused Defendants."

***C. Nominal Defendants BDI, Inc. and the Lundquist Institute***

16. Nominal Defendant BDI, Inc. is a corporation and HeartLung's upstream licensor of the asserted patents. BDI is a defendant in HeartLung's pending Los Angeles Superior Court action concerning the May 14, 2021 license. On July 7, 2026, BDI's counsel stated in writing that BDI provides certain software and related services that SimonMed Imaging may access under agreements between BDI and SimonMed. On September 27, 2026, HeartLung asked BDI in writing to join this action voluntarily or to consent to its joinder. On October 2, 2026, BDI's counsel declined in writing. BDI is joined under Rule 19 because it holds retained interests in the asserted patents and disputes HeartLung's independent enforcement rights. Because HeartLung's interests are adverse to BDI on those issues and BDI has refused to join voluntarily, BDI is joined as a nominal defendant. No infringement claim or claim for monetary relief is asserted against BDI in this action. [Exs. F, I, M, O.]

17. Nominal Defendant The Lundquist Institute for Biomedical Innovation is a California nonprofit research institute located in Torrance, California, and is the record owner of the '590 and '022 Patents. On October 2, 2026, after HeartLung's written request, Lundquist stated in writing that it does not consent to HeartLung's initiation of any enforcement action concerning the asserted patents and does not agree to join or be joined in any such action.

HeartLung therefore joins Lundquist as a nominal defendant under Federal Rule of Civil Procedure 19 solely to permit adjudication of the asserted patent rights in its presence. In the alternative, HeartLung requests that the Court realign Lundquist as an involuntary plaintiff if the requirements for that alignment are satisfied. Lundquist is not alleged to have infringed the patents, and no claim for damages or other monetary relief is asserted against it. [Exs. M–N.]

18. HeartLung is presently unaware of the true names and capacities of defendants sued as DOES 1–20, who may include additional affiliates, vendors, software providers, contractors, physician groups, reading entities, and other persons or entities that made, used, offered, sold, supplied, instructed, or materially contributed to the accused workflow. HeartLung will seek leave to amend when their identities and roles are established through discovery.

## STANDING AND JOINDER

### *A. Chain of Title*

19. The ’590 and ’022 Patents are owned of record by the Lundquist Institute. The chain of rights is Lundquist → BDI → HeartLung. [Exs. A, F, K–L.]

20. HeartLung has not been provided the underlying agreement between LA BioMed/Lundquist and BDI. BDI nevertheless represented in the May 14, 2021 HeartLung agreement that it “has the rights to sublicense the patents,” and Dr. Matthew Budoff stated during the May 2021 negotiations that HeartLung’s grant would formally be considered a sublicense. BDI’s July 7, 2026 counsel letter further stated that LA BioMed licensed the asserted patents to BDI and retained ownership and other rights. On September 29, 2026, Lundquist’s Chief Legal and Intellectual Property Officer described BDI in writing as Lundquist’s “exclusive licensee.” HeartLung requested a copy of the LA BioMed/Lundquist–BDI agreement from Lundquist on September 28, 2026; Lundquist did not provide it. HeartLung therefore pleads BDI’s upstream authority based on BDI’s express

representations and conduct and Lundquist's written description of BDI, without alleging an execution date or specific provisions of an upstream agreement that HeartLung has never received. [Exs. A, F, M–N.]

21. HeartLung entered into the May 14, 2021 agreement, paid consideration, and invested substantial capital, engineering, regulatory, and commercial resources in reliance on BDI's express written representation that it had the rights to sublicense the asserted patents. Having induced that reliance and accepted the benefits of the agreement, BDI is estopped from denying, as against HeartLung, that it possessed the authority to grant the exclusive rights described in that agreement. To the extent the upstream LA BioMed/Lundquist–BDI agreement bears on the scope of those rights, that agreement is within the possession of BDI and Lundquist, both of whom are parties to this action, and will be obtained in discovery.

22. On May 14, 2021, BDI granted HeartLung a royalty-bearing, exclusive worldwide license/sublicense under the '590 and '022 Patents. The agreement states that BDI desired to sublicense those patents to HeartLung and represented that it had the rights to do so. The agreement also preserves specified BDI use of the patents at the Lundquist Institute. HeartLung alleges that the grant conveyed exclusionary commercial rights within its scope; BDI and Lundquist dispute whether the agreement separately conveyed a unilateral right to sue. [Exs. A, N–O.]

23. By virtue of the May 14, 2021 exclusive grant, HeartLung alleges that it holds an exclusionary interest in the licensed commercial field and has suffered concrete, particularized injury from the allegedly unauthorized commercial deployment of the licensed technology. Because BDI and Lundquist dispute whether HeartLung may sue without the patent owner, HeartLung asked both to join this action voluntarily. Both refused. HeartLung therefore joins both BDI and Lundquist under Rule 19 so that any statutory-party issue can be resolved without

adjudicating the infringement claims in the absence of parties holding interests in the patents.

24. The May 14, 2021 Patent License Agreement remains in force according to HeartLung's records and has not been rescinded or judicially declared invalid. HeartLung's pending Los Angeles Superior Court action against BDI seeks enforcement and damages for alleged breach of that agreement rather than rescission. [Ex. I.]

***B. No Authorized License to the Accused Defendants***

25. BDI's counsel stated on July 7, 2026 that BDI provides certain software and related services that SimonMed Imaging may access under agreements between BDI and SimonMed. HeartLung has not been provided those agreements, and BDI again declined to produce them on October 2, 2026. To the extent any Accused Defendant contends that such an agreement authorizes it to practice the '590 or '022 Patents, HeartLung alleges that any such purported grant conveys no license defense. [Exs. F, O.]

26. By the May 14, 2021 agreement, BDI granted HeartLung exclusive worldwide rights under the asserted patents. The only rights BDI retained were those preserved by the agreement's retained-use language concerning BDI's use of the patents at the Lundquist Institute, which by its terms is limited to clinical and/or research studies at the Lundquist Institute using the existing non-automated tool. [Exs. A, G.]

27. On information and belief, any BDI–SimonMed agreement was entered after May 14, 2021. A licensor cannot convey to a later licensee rights it has already exclusively granted to another. Any purported grant by BDI authorizing SimonMed, Cascaid, or any other third party to practice the asserted patents in commercial CT bone-density reporting at SimonMed facilities outside the Lundquist Institute therefore exceeded BDI's retained rights, was made without authority, and does not authorize the accused conduct. HeartLung did not

consent to, and has never authorized, any such grant. HeartLung asserted this position to BDI in writing in July 2026, and to Lundquist in writing on September 30, 2026. In its October 2, 2026 response, Lundquist stated that questions regarding BDI's authorizations to third parties such as SimonMed should be directed to BDI. [Exs. G, M–N.]

***C. Joinder of BDI and the Lundquist Institute***

28. Lundquist is a required party under Federal Rule of Civil Procedure 19(a)(1) because it holds legal title to the asserted patents and, on information and belief, retains royalty, reversionary, and/or enforcement-related interests such that the Court cannot accord complete relief among the existing parties, and such that adjudication in Lundquist's absence would risk inconsistent obligations and leave Lundquist's interests in the asserted patents unrepresented. BDI is likewise a required party because Lundquist identifies BDI as its exclusive licensee, BDI holds whatever rights it retained under the May 14, 2021 agreement, and BDI disputes the scope of HeartLung's rights, such that adjudication in BDI's absence would risk inconsistent obligations and impair BDI's claimed interests. [Exs. A, F, N.]

29. Before filing this action, HeartLung formally requested that Lundquist participate. On September 28, 2026, HeartLung, through counsel, sent Lundquist a written request that Lundquist either voluntarily join this action as a co-plaintiff or consent in writing to its joinder as a party. The request stated that HeartLung asserts no infringement claim and seeks no monetary relief against Lundquist, asked for a copy of the LA BioMed/Lundquist–BDI agreement, and advised that if Lundquist declined, HeartLung intended to seek Lundquist's joinder under Rule 19. On September 29, 2026, Lundquist's Chief Legal and Intellectual Property Officer responded that Lundquist did not approve the filing of this action and intended to consult with BDI. HeartLung replied on September 30, 2026, reserving its rights and disputing BDI's authority to grant SimonMed

rights inconsistent with HeartLung's exclusive license. On October 2, 2026, after consulting with BDI, Lundquist advised HeartLung in writing that it "does not consent to HeartLung's initiation of any enforcement action" regarding the asserted patents and "does not agree to join or be joined in any such action." [Exs. M–N.]

30. HeartLung made the same request of BDI. On September 27, 2026, HeartLung, through counsel, asked BDI in writing to join this action voluntarily or to consent to its joinder, stating that no infringement claim or monetary relief would be sought against BDI. On October 2, 2026, BDI's counsel declined. BDI's letter described SimonMed as BDI's customer and stated that, according to SimonMed, the SimonMed bone-density report at issue is marked with BDI's logo. BDI also stated that it does not practice either asserted patent, disputed HeartLung's enforcement rights and infringement contentions, and declined to produce its agreements with SimonMed. [Exs. M, O.]

31. Because both Lundquist and BDI have expressly refused to participate, voluntary joinder is unavailable. HeartLung therefore requests that the Court order Lundquist and BDI joined under Federal Rule of Civil Procedure 19 as nominal defendants. In the alternative, if the Court determines that the requirements for involuntary-plaintiff alignment under Rule 19(a)(2) and *Independent Wireless Telephone Co. v. Radio Corp. of America*, 269 U.S. 459 (1926), are satisfied, HeartLung requests that Lundquist be realigned as an involuntary plaintiff. A patent owner's refusal to participate does not prevent its joinder where, as here, joinder is necessary to protect the rights of a party holding exclusionary interests in the patent. Any defect in HeartLung's statutory entitlement to sue without the patent owner is non-jurisdictional and is curable through joinder of the necessary patent-rights holders, which HeartLung seeks in this Complaint. *See Lone Star Silicon Innovations, LLC v. Nanya Tech. Corp.*, 925 F.3d 1225 (Fed. Cir. 2019).

## JURISDICTION AND VENUE

32. This action arises under the patent laws of the United States, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

33. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Claims arising under the patent laws are within the exclusive jurisdiction of the federal district courts.

34. This Court has personal jurisdiction over the SimonMed Defendants because the accused transaction arose from a SimonMed-branded facility in San Diego, California and from business purposefully directed to patients in this District. HeartLung alleges personal jurisdiction over Cascaid because Cascaid purposefully partnered with SimonMed to provide the Digital Health Platform and patient-facing services and a result was delivered through Cascaid's web portal in connection with a scan acquired in this District. BDI is subject to personal jurisdiction in California and is already litigating related license issues with HeartLung in California state court. Lundquist is a California entity joined solely as a nominal defendant holding patent rights.

35. Venue is proper under 28 U.S.C. § 1400(b) as to Health Diagnostics because the alleged acts of infringement include the May 2026 acquisition and commercial offering at the SimonMed Imaging–La Jolla facility, 4570 Executive Drive, Suite 100, San Diego, California 92121, and public records identify Health Diagnostics as the SimonMed-affiliated legal business associated with the La Jolla facility's NPI. [Ex. J.]

36. Venue is also proper under § 1400(b) as to SimonMed Imaging Management, LLC and SimonMed Imaging, LLC. The La Jolla facility is a physical place in this District from which SimonMed-branded imaging business is regularly and continuously conducted. On information and belief, those entities have established and ratified the La Jolla facility as their own place of business: the facility operates and is publicly held out under the "SimonMed Imaging" name;

SimonMed's own location materials list the La Jolla facility among SimonMed's Southern California locations; patients are charged under the name "SimonMed Imaging"; and SimonMed Imaging Management, LLC performs management, contracting, and vendor-integration functions for SimonMed-branded facilities, including the La Jolla facility. [Ex. J.] *See In re Cray Inc.*, 871 F.3d 1355, 1363–64 (Fed. Cir. 2017). The precise entity-by-entity lease, employment, and control facts are within the SimonMed Defendants' records. If the Court determines that venue is not proper as to a particular SimonMed Defendant, HeartLung requests venue discovery and transfer or severance as appropriate rather than dismissal of otherwise viable claims.

37. Cascaid allegedly committed acts of infringement in this District by participating in the processing, reporting, and/or delivery, through Cascaid's web portal, of a bone-density result derived from CT image data acquired at SimonMed's La Jolla facility. Cascaid publicly lists a mailing address in Mountain View, California. To the extent Cascaid contests patent venue, HeartLung requests appropriate venue discovery and transfer or severance rather than dismissal if the Court determines that § 1400(b) is not satisfied. *See In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).

38. Venue is proper as to nominal defendants BDI and Lundquist, which are joined under Rule 19 and as to which no infringement claim is asserted, under 28 U.S.C. § 1391.

## THE ASSERTED PATENTS

39. The '590 Patent, titled "Method for Thoracic Vertebral Bone Density Measurement by Thoracic Quantitative Computed Tomography," issued on September 1, 2015. The patent includes method, system, and machine-readable-medium claims directed to determining thoracic bone mineral density from CT image data representing the heart without a calibration phantom. A true and correct copy of the '590 Patent is attached as Exhibit K.

40. Claim 1 of the ’590 Patent is a method claim for determining bone mineral density using phantomless quantitative computed tomography from CT image data representing the heart. [Ex. K.]

41. The ’022 Patent, bearing the same title and issued on June 30, 2020, is a continuation in the same patent family. A true and correct copy of the ’022 Patent is attached as Exhibit L.

42. Claim 1 of the ’022 Patent is a method claim for determining bone mineral density using quantitative computed tomography, without a calibration phantom, from CT image data representing the heart. [Ex. L.]

43. HeartLung asserts at least method claim 1 of each patent as a representative claim. HeartLung reserves the right to assert additional method claims, including dependent claims directed to T-score and Z-score determination, following claim construction and discovery. HeartLung does not assert the system or machine-readable-medium claims of either patent in this pleading and reserves the right to seek leave to assert them if discovery supports doing so.

44. HeartLung’s pre-suit investigation supports a good-faith allegation that the accused workflow practices one or more claims of the asserted patents. Because Defendants and their vendors have not disclosed the source code, workflow logic, vertebral-level selection rules, normalization method, scanner-specific correction, or actor-by-actor performance of the method steps — all of which reside exclusively within Defendants’ possession and control — certain technical allegations are necessarily made on information and belief pending discovery.

## THE BDI LICENSE AND EXISTING CONTRACT DISPUTE

45. BDI’s founders and technical personnel, including Matthew Budoff, Christopher Dailing, and Song Shou Mao, were involved in the development and patenting of thoracic CT bone-density methods that became the subject of the asserted patent family, which is owned of record by the Lundquist Institute.

46. HeartLung invested substantial capital, engineering effort, regulatory resources, validation work, and commercialization resources to automate and commercialize the licensed technology.

47. On July 29, 2022, the U.S. Food and Drug Administration cleared HeartLung's ABMD Software, which HeartLung markets as AutoBMD, under K213760. [Ex. H.]

48. In August 2023, HeartLung filed suit against BDI and related defendants in the Superior Court of California, County of Los Angeles, Case No. 23STCV20656, alleging specific performance, breach of the exclusive licensing agreement, and misappropriation of trade secrets. [Ex. I.]

49. The BDI contract dispute and the present patent claims arise from overlapping commercial facts but are legally distinct. The state action addresses BDI's contractual obligations to HeartLung and does not adjudicate infringement, validity, or any other issue arising under the patent laws. This action addresses the Accused Defendants' infringement of federal patent rights, which is within this Court's exclusive jurisdiction. Resolution of the infringement claims asserted here does not depend on the outcome of the state contract action.

**SIMONMED'S DIRECT DEALINGS WITH HEARTLUNG**

50. Beginning no later than early 2024, Dr. John Simon and SimonMed personnel engaged directly with HeartLung regarding CT-based bone-density reporting and HeartLung's AutoBMD technology. [Ex. C.]

51. Those dealings continued for more than a year and included direct commercial negotiations regarding pricing and implementation; a February 1, 2025 email from Dr. John Simon transmitting the signed contract; SimonMed's request for a joint press release; discussion of AutoBMD use on coronary calcium and CCTA studies; and discussion of PACS connectivity options and scheduling of implementation and training. [Ex. C.]

52. Through those negotiations and implementation activities,

SimonMed obtained detailed knowledge of HeartLung's technology, its commercial offering, its implementation model, and its claimed exclusive commercial position. [Ex. C.]

53. HeartLung devoted substantial executive, legal, technical, and commercial resources to the SimonMed relationship in reliance on the parties' negotiations and executed arrangement.

54. In or about April 2025, SimonMed proposed that HeartLung be paid only when Medicare reimbursed for the service. HeartLung's counsel raised legal concerns regarding that proposed structure. Shortly thereafter, SimonMed, through its Chief Innovation Officer, paused and then declined to continue the project, and SimonMed ceased substantively engaging with HeartLung. [Ex. C.]

55. SimonMed therefore was not an innocent downstream user with no knowledge of HeartLung or the relevant technology. It had direct, prolonged, and specific exposure to HeartLung's CT-based bone-density product and commercial rights before the accused SimonMed/Cascaid workflow was identified.

## THE ACCUSED SIMONMED/CASCAID WORKFLOW

56. In May 2026, HeartLung's founder, Dr. Morteza Naghavi, obtained a coronary artery calcium examination at SimonMed's La Jolla facility and received, through the SimonMed/Cascaid Health patient-facing channel, a bone-density result derived from that examination. [Ex. B.]

57. The result characterizes the patient's bone density as normal, reports a T-score of approximately −0.55, displays a bone-density scale, includes coronal and sagittal vertebral CT images, and was delivered through Cascaid Health's web portal at sm.cascaidhealth.com. The result also reports that no vertebral fracture was identified. The result delivered to Dr. Naghavi does not display BDI's name or logo. BDI's October 2, 2026 letter nevertheless states that, according to SimonMed, the report at issue is marked with BDI's logo. Whether that statement refers to a different version of the report, an internal or physician-facing report, or

another output of the accused workflow is within Defendants' possession and will be addressed in discovery. [Exs. B, O.]

58. The underlying scan was a cardiac/coronary calcium CT examination with a limited thoracic field of view showing multiple thoracic vertebrae; HeartLung's pre-suit investigation indicates that no calibration phantom was used. The patient-facing result shows vertebral-image analysis and reports quantitative bone-density information and a T-score. On information and belief, the accused workflow analyzes multiple thoracic vertebral levels within the cardiac image volume; the precise number and sequence of levels are implemented in nonpublic software and require discovery. [Ex. B.]

59. On information and belief, SimonMed, Cascaid, and/or another vendor receives or routes the cardiac or thoracic CT image data into software that identifies thoracic vertebral anatomy, selects consecutive thoracic vertebral levels, measures CT attenuation or related image values within trabecular bone, converts or normalizes those values into a quantitative bone-density output, and generates a patient-facing result including a BMD classification and T-score.

### *A. Infringement of the Asserted Method Claims*

60. On information and belief, the accused workflow performs each step of at least claim 1 of the '590 Patent and claim 1 of the '022 Patent, including identifying a thoracic spine level at the position corresponding to the site of origin of the left main coronary artery in the cardiac CT image data, either literally or, in the alternative, under the doctrine of equivalents. The accused result was generated from a cardiac/coronary calcium CT study whose image data represent the heart and the adjacent thoracic vertebrae, and the result reflects automated, multi-level vertebral analysis within that same image data. [Ex. B.]

61. The precise vertebral-level selection logic is implemented in source code and technical specifications that reside exclusively within Defendants' and their vendors' possession and control and are not ascertainable from the patient-

facing report or any public source. This allegation is therefore pled on information and belief on the factual basis set out in Paragraphs 56 through 60, pending discovery.

62. On information and belief, the accused workflow analyzes at least two and, for at least some studies, three consecutive thoracic vertebral levels from a CT scan representing the heart and thoracic spine.

63. On information and belief, the accused workflow determines thoracic trabecular BMD from CT Hounsfield Unit or derivative image-density values without a calibration phantom and applies some quantitative conversion, correction, calibration, translation, and/or normalization to generate the reported bone-density output. Whether that functionality satisfies the particular scanner/tissue normalization limitations of the ’022 Patent—including the claimed two-constant translation formula—is not visible in the patient-facing report and requires source-code and technical discovery.

***B. Direction, Control, and Joint Enterprise***

64. On information and belief, the steps of the accused method are performed by SimonMed and Cascaid acting together, and/or by vendors, contractors, or radiologists whose performance SimonMed directs and controls.

65. SimonMed conditions its patients’ receipt of the accused bone-density report upon participation in the accused workflow, and establishes the manner and timing of that performance. HeartLung alleges the following supporting facts:

a. A patient cannot obtain the accused bone-density report independently. The report is available only as an adjunct to a SimonMed-performed CT examination, and only to patients who present to a SimonMed facility, consent to SimonMed’s imaging, and pay SimonMed for the examination and the associated service.

Dr. Naghavi paid SimonMed for both.

b. SimonMed controls the upstream inputs. SimonMed determines the scan protocol, the field of view, the reconstruction parameters, and the timing of acquisition, and SimonMed alone possesses the CT image data. Cascaid cannot perform any step of the accused method unless and until SimonMed transmits or authorizes transmission of that data.

c. SimonMed publicly describes a partnership with Cascaid Health and states that its Digital Health Platform is powered by Cascaid. On information and belief, one or more written or electronic agreements govern Cascaid's provision of services to SimonMed, including patient-facing delivery and support for CT Bone Density+. HeartLung has not seen a SimonMed–Cascaid agreement, and the agreement name, date, compensation terms, and allocation of technical responsibilities are within Defendants' possession and will be sought in discovery.

d. On information and belief, the accused result is delivered through a patient-facing channel associated with SimonMed's enhanced imaging services; Dr. Naghavi's report was delivered through Cascaid Health's web portal at sm.cascaidhealth.com. SimonMed's public materials state that the Digital Health Platform used for CT Bone Density+ is powered by Cascaid Health. [Ex. B.]

e. Dr. Naghavi paid SimonMed for the May 2026 CAC examination and associated bone-density service, and the patient charge appeared under "SimonMed Imaging." The patient-facing record does not identify which SimonMed legal entity booked the charge or whether, how, or in what amount SimonMed compensates Cascaid, BDI, or another vendor. Those billing and vendor-payment facts are

within Defendants' possession and will be established through discovery.

66. Accordingly, all steps of at least one asserted method claim are attributable to SimonMed, and in the alternative to Cascaid, under *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc).

67. In the further alternative, HeartLung alleges joint or attributable performance to the extent discovery establishes the elements of a joint enterprise. Presently known facts include SimonMed's public description of a partnership with Cascaid, Cascaid's role in the powered patient-facing platform, SimonMed's control over the patient examination and CT image acquisition, and the delivery of Dr. Naghavi's result through Cascaid's web portal. HeartLung alleges on information and belief that the parties share a common commercial purpose in delivering CT Bone Density+; the precise pecuniary arrangement and allocation of control are nonpublic and will be addressed in discovery.

## PRE-SUIT NOTICE

68. On June 3, 2026, HeartLung's counsel sent SimonMed a detailed written cease-and-desist letter by email and certified mail. The letter identified the '590 and '022 Patents by number and title and expressly accused SimonMed of unauthorized phantomless thoracic bone-density reporting derived from cardiac, coronary calcium, chest, and other thoracic CT scans. [Ex. D.]

69. The June 3 letter described the representative SimonMed/Cascaid patient report, the underlying cardiac CT scan, the absence of a calibration phantom, the T-score output, and HeartLung's basis for believing the accused workflow practiced at least claim 1 of each asserted patent. It further demanded that SimonMed cease and desist, disable the accused workflow, identify every vendor and contractor involved, produce agreements and communications, disclose the technical method, identify patient and billing volumes, and preserve all relevant evidence. [Ex. D.]

70. The June 3 letter specifically requested disclosure of the number of vertebral levels analyzed, whether consecutive vertebral levels are used, whether the left main coronary artery origin or another cardiac landmark defines the thoracic level, whether Hounsfield Unit values are converted to BMD, whether a T-score or Z-score is calculated, and whether phantomless calibration, normalization, or scanner-specific correction is used. [Ex. D.]

71. On June 15, 2026, HeartLung sent a follow-up and final notice, which extended the response deadline through June 30, 2026, reiterated the requested technical and business disclosures, and provided SimonMed a final opportunity to resolve the dispute without litigation. [Ex. E.]

72. SimonMed did not provide the requested technical or business disclosures in response to either letter, and did not provide HeartLung written confirmation that the accused workflow was disabled or discontinued. HeartLung does not contend that SimonMed was under a legal obligation to respond. HeartLung alleges these facts to establish the date and content of SimonMed's actual knowledge of the asserted patents and of HeartLung's infringement contentions, and to establish that the technical facts necessary to plead certain claim limitations with greater particularity remain exclusively within Defendants' possession notwithstanding HeartLung's diligent pre-suit efforts to obtain them.

73. From at least June 3, 2026 forward, SimonMed had actual written notice of the asserted patents, the accused workflow, the specific nature of HeartLung's infringement allegations, and HeartLung's demand that the workflow be suspended.

74. The accused service remained publicly available after the June 3, 2026 notice. As of September 23, 2026, SimonMed's public website continued to advertise CT Bone Density+ as an AI-enhanced add-on, including T-score and Z-score metrics and delivery through a Digital Health Platform powered by Cascaid Health. In addition, HeartLung is informed that in or about August 2026, after the

June 3 notice, a HeartLung employee obtained a SimonMed CT bone-density report in Houston, Texas that bore Cascaid branding. These facts establish that the SimonMed/Cascaid service continued in operation after actual notice.

**BDI'S STATEMENTS REGARDING SIMONMED**

75. On July 7, 2026, counsel for BDI sent HeartLung a response concerning the SimonMed cease-and-desist letter. [Ex. F.]

76. BDI's July 7 letter expressly stated that BDI provides certain software and related services that SimonMed Imaging may access under agreements between BDI and SimonMed. It further acknowledged that the '590 and '022 Patents are owned by the Lundquist Institute (formerly LA BioMed). [Ex. F.]

77. BDI's statement corroborates the existence of a commercial software/services relationship between BDI and SimonMed relevant to the accused field, but BDI expressly stated that its letter should not be read as an admission that BDI software or services were the instrumentality accused by HeartLung. In its October 2, 2026 letter, BDI described SimonMed as BDI's customer, stated that according to SimonMed the bone-density report at issue is marked with BDI's logo, and stated that BDI does not practice either asserted patent. To the extent BDI software or services are used in the accused SimonMed/Cascaid workflow, that use is outside BDI's retained rights for the reasons alleged in Paragraphs 25 through 27. The precise role of BDI software in the accused workflow remains a matter for discovery. [Exs. F, O.]

78. BDI's letters disputed HeartLung's patent standing and infringement theories but did not provide the underlying SimonMed agreements, technical workflow, source code, report templates, implementation documents, or requested technical disclosures. On October 2, 2026, BDI again declined to produce its SimonMed agreements. For the reasons alleged in Paragraphs 25 through 27, any agreement between BDI and SimonMed does not authorize the accused conduct. [Exs. F, O.]

79. On or about July 10, 2026, HeartLung rejected BDI's demand that HeartLung withdraw its SimonMed notice, reiterated its position that BDI had granted HeartLung exclusive commercial rights, demanded production of the BDI–SimonMed agreements and technical materials, and expressly reserved patent-related relief in the appropriate forum with all necessary parties joined. [Ex. G.]

## WILLFULNESS AND KNOWLEDGE

80. SimonMed had knowledge of HeartLung's CT-based bone-density technology and commercial rights through its prolonged negotiations and technical implementation work with HeartLung beginning in 2024 and continuing through the February 1, 2025 signed contract and the April 2025 pause.

81. SimonMed received actual written notice of the '590 and '022 Patents and of the specific infringement allegations no later than June 3, 2026, and a second written notice on June 15, 2026.

82. SimonMed continued to operate, promote, and offer the accused workflow after receiving actual notice of the asserted patents, as alleged in Paragraph 74. On information and belief, SimonMed has derived and continues to derive revenue from the accused workflow after notice. The extent of SimonMed's post-notice technical review, subjective belief, and internal decision-making is within Defendants' possession and will be addressed in discovery.

83. SimonMed's continued infringement after receiving written notice of the asserted patents on June 3, 2026 — with knowledge of the patents, of HeartLung's specific infringement contentions, and of HeartLung's demand that the workflow be suspended, and against the background of its prolonged prior dealings with HeartLung concerning the same technology — has been and continues to be knowing, deliberate, and willful, supporting enhanced damages under 35 U.S.C. § 284. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016).

84. Cascaid obtained actual written notice of the asserted patents and HeartLung's infringement allegations no later than June 3, 2026, when the cease-and-desist communication was copied to team@cascaidhealth.com. The June 15, 2026 follow-up communication was likewise copied to that Cascaid address. HeartLung therefore alleges Cascaid's knowledge from June 3, 2026 forward, independently of service of this Complaint. Cascaid's Digital Health Platform continued to deliver CT Bone Density+ results after that date, as alleged in Paragraph 74.

**COMPLIANCE WITH 35 U.S.C. § 287**

85. HeartLung asserts only method claims of the '590 and '022 Patents in this pleading. The marking requirement of 35 U.S.C. § 287(a) does not apply to method claims asserted without accompanying apparatus claims. In all events, HeartLung seeks at least those damages available from the date of actual notice, alleged to be June 3, 2026.

**COUNT I**

**Direct Infringement of U.S. Patent No. 9,119,590 (35 U.S.C. § 271(a)) — Against the Accused Defendants**

86. HeartLung realleges and incorporates Paragraphs 1 through 85 as though fully set forth herein, except Paragraphs 45 through 49 and 75 through 79, which are not incorporated into this Count.

87. SimonMed and Cascaid have directly infringed and continue to directly infringe one or more method claims of the '590 Patent in violation of 35 U.S.C. § 271(a) by *using*, and causing the performance of, the patented phantomless thoracic BMD methods in the United States, including in connection with Dr. Naghavi's May 2026 examination at the La Jolla facility and after June 3, 2026 as alleged in Paragraph 74.

88. At least with respect to representative claim 1, the accused workflow practices each step of the claimed method, literally or under the doctrine of

equivalents, for the reasons alleged in Paragraphs 56 through 63 above.

89. To the extent the steps of the asserted method are performed by more than one entity, SimonMed and/or Cascaid direct and control the performance of all steps, and/or the participants constitute a joint enterprise, such that performance of every step is attributable to SimonMed and/or Cascaid under *Akamai*, as alleged in Paragraphs 64 through 67 above.

90. The SimonMed/Cascaid result delivered to Dr. Naghavi further includes a T-score output, which is consistent with dependent claims of the ’590 Patent directed to T-score determination. [Ex. B.]

91. HeartLung has suffered and will continue to suffer damages as a result of the infringement in an amount to be proven at trial, but no less than a reasonable royalty, together with any recoverable lost profits.

92. HeartLung is entitled to injunctive relief under 35 U.S.C. § 283, damages under § 284, and all other relief available by law.

**COUNT II**

**Direct Infringement of U.S. Patent No. 10,695,022 (35 U.S.C. § 271(a)) — Against the Accused Defendants**

93. HeartLung realleges and incorporates Paragraphs 1 through 85 as though fully set forth herein, except Paragraphs 45 through 49 and 75 through 79, which are not incorporated into this Count.

94. SimonMed and Cascaid have directly infringed and continue to directly infringe one or more method claims of the ’022 Patent in violation of 35 U.S.C. § 271(a) by *using*, and causing the performance of, the patented methods in the United States, including after June 3, 2026 as alleged in Paragraph 74.

95. At least with respect to representative claim 1, the accused workflow practices each step of the claimed method, literally or under the doctrine of equivalents, for the reasons alleged in Paragraphs 56 through 63 above, including, on information and belief, the claimed phantomless normalization of the thoracic

trabecular BMD measurement.

96. On information and belief, SimonMed and Cascaid use the accused workflow directly and/or direct or control vendors and service providers whose acts are attributable to them under *Akamai* and applicable law, as alleged in Paragraphs 64 through 67 above.

97. HeartLung has suffered and will continue to suffer damages as a result of the infringement in an amount to be proven at trial, but no less than a reasonable royalty, together with any recoverable lost profits.

98. HeartLung is entitled to injunctive relief under 35 U.S.C. § 283, damages under § 284, and all other relief available by law.

**COUNT III**

**Induced Infringement (35 U.S.C. § 271(b)) — Against the SimonMed Defendants**

99. HeartLung realleges and incorporates Paragraphs 1 through 85 as though fully set forth herein, except Paragraphs 45 through 49 and 75 through 79, which are not incorporated into this Count. HeartLung further incorporates Paragraphs 86 through 92 and 93 through 98 solely as to the direct infringement alleged therein.

100. This Count is pled in the alternative to Counts I and II. To the extent the Court or the trier of fact determines that SimonMed does not itself perform, or is not attributed with the performance of, every step of an asserted method claim, HeartLung alleges that SimonMed is liable for inducing the infringement of others.

101. At least since June 3, 2026, SimonMed has had actual knowledge of the asserted patents and actual knowledge of HeartLung's contention that the SimonMed/Cascaid workflow infringes those patents. In the alternative, SimonMed has been willfully blind to the existence and infringement of the asserted patents in light of its prolonged 2024–2025 dealings with HeartLung concerning the same technology and its receipt of the June 3 and June 15, 2026

letters.

102. On information and belief, the direct infringement induced by SimonMed is performed by Cascaid and/or one or more software vendors, radiology groups, contractors, physicians, or affiliates that perform the accused CT-based bone-density processing.

103. SimonMed knowingly and intentionally induces that direct infringement by providing CT image data to the performing party, configuring or integrating the accused service into its imaging and reporting operations, ordering or enabling CT-based bone-density processing for individual patients, directing delivery of the resulting reports through its patient-facing channel, promoting and offering the bone-density service to its patients, and paying for and commercially benefiting from the performance of the accused workflow.

104. SimonMed's inducing acts are undertaken with the purpose of causing the accused CT-based bone-density workflow to be performed. After receiving the June 3 and June 15, 2026 notices identifying the patents and the accused conduct, SimonMed did not respond to HeartLung's notices and continued to promote, enable, and commercially benefit from the service, including by continuing to advertise CT Bone Density+ as alleged in Paragraph 74. SimonMed's Enhanced CT Calcium Score and Bone Density Add-Ons webpage was also publicly accessible on October 25, 2026. [Ex. P.] Whether SimonMed possessed a good-faith noninfringement or invalidity position and the factual basis for any such position are matters to be established on the evidentiary record.

105. HeartLung is entitled to damages and all other relief available for SimonMed's induced infringement, including enhanced damages under 35 U.S.C. § 284 for post-notice inducement.

## PRAYER FOR RELIEF

WHEREFORE, HeartLung respectfully requests that the Court enter

judgment in its favor and against the Accused Defendants as follows:

A. Enter judgment that the Accused Defendants have infringed one or more claims of the ’590 Patent and the ’022 Patent. No judgment of infringement and no monetary relief is sought against nominal defendants BDI or Lundquist;

B. Enter judgment that the SimonMed Defendants have induced infringement of one or more claims of the ’590 Patent and the ’022 Patent;

C. Enter permanent injunctive relief under 35 U.S.C. § 283 prohibiting the Accused Defendants from further infringement, inducement, and commercial deployment of the accused workflow absent authorization;

D. Award HeartLung damages adequate to compensate for the infringement under 35 U.S.C. § 284, including recoverable lost profits and/or a reasonable royalty, in an amount to be determined at trial;

E. Order an accounting of infringing studies, reports, patients, facilities, scan types, dates of service, revenues, charges, payer claims, vendor payments, and profits attributable to the accused workflow;

F. Enhance damages up to three times the amount found or assessed under 35 U.S.C. § 284 for willful infringement;

G. Declare this an exceptional case under 35 U.S.C. § 285 and award HeartLung its reasonable attorneys’ fees;

H. Order the joinder of BDI and the Lundquist Institute under Federal Rule of Civil Procedure 19 and adjudicate all rights in the asserted patents as among HeartLung, BDI, and the Lundquist Institute as necessary to afford complete relief, including a determination that no purported grant by BDI to any Accused Defendant authorizes the

accused conduct;

I. Award pre-judgment and post-judgment interest, costs, and all other amounts permitted by law;

J. Order preservation and, where appropriate, expedited production of technical and commercial evidence concerning the accused workflow; and

K. Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

HeartLung demands a trial by jury on all issues so triable.

Dated: October 25, 2026

**MADALA LAW**

By: /s/ Naveen Madala
Naveen Madala (SBN 219817)
Attorneys for Plaintiff HeartLung Corporation

## EXHIBIT INDEX

| Exhibit | Description |
|---|---|
| **Exhibit A** | May 14, 2021 Patent License Agreement between BDI and HeartLung, including the exclusive worldwide license/sublicense language, BDI's representation that it possessed sublicensing rights, and the retained-use language. |
| **Exhibit B** | SimonMed/Cascaid Health CT-derived bone-density result tied to Dr. Naghavi's May 2026 SimonMed La Jolla examination, as displayed on Cascaid Health's web portal (sm.cascaidhealth.com), including the T-score of approximately −0.55, bone-density scale, and coronal and sagittal vertebral images. |
| **Exhibit C** | SimonMed–HeartLung communications concerning AutoBMD negotiations, Dr. John Simon's February 1, 2025 transmission of the signed contract, proposed joint press release, use on CAC/CCTA studies, PACS/implementation, and the April 2025 pause/termination discussions. |
| **Exhibit D** | June 3, 2026 cease-and-desist letter to SimonMed concerning the accused CT bone-density workflow. |
| **Exhibit E** | June 15, 2026 final notice before suit, including the extended June 30 response deadline. |
| **Exhibit F** | BDI counsel's July 7, 2026 response regarding the SimonMed demand, BDI–SimonMed software/services relationship, patent ownership, and BDI's standing position. |
| **Exhibit G** | HeartLung's July 2026 response to BDI concerning HeartLung's license position, SimonMed, and demand for BDI–SimonMed technical and commercial materials. |
| **Exhibit H** | FDA clearance documentation for HeartLung AutoBMD (K213760). |
| **Exhibit I** | Complaint in HeartLung Corp. v. BDI, Inc., Los Angeles County Superior Court, Case No. 23STCV20656, including its filed exhibit set. |
| **Exhibit J** | SimonMed Southern California locations/order form identifying the La Jolla facility and its San Diego address. |

| Exhibit | Description |
|---|---|
| **Exhibit K** | U.S. Patent No. 9,119,590, "Method for Thoracic Vertebral Bone Density Measurement by Thoracic Quantitative Computed Tomography" (issued September 1, 2015). |
| **Exhibit L** | U.S. Patent No. 10,695,022, "Method for Thoracic Vertebral Bone Density Measurement by Thoracic Quantitative Computed Tomography" (issued June 30, 2020). |
| **Exhibit M** | HeartLung's September 27–28, 2026 written requests to BDI and to the Lundquist Institute for voluntary joinder or consent to joinder. |
| **Exhibit N** | The Lundquist Institute's September 29, 2026 and October 2, 2026 written responses declining to consent to any enforcement action or to join or be joined. |
| **Exhibit O** | BDI counsel's October 2, 2026 letter declining joinder and declining to produce the BDI–SimonMed agreements. |
| **Exhibit P** | Screenshot of SimonMed's Enhanced CT Calcium Score and Bone Density Add-Ons webpage, captured October 25, 2026. |